IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARCHIE ANTWON BRIDGES, | : | Civil No. 3:25-cv-1201 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN BETH RICKARD, | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Archie Antwon Bridges ("Bridges") initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Bridges alleges that the Federal Bureau of Prisons ("BOP") improperly denied him earned time credits under the First Step Act ("FSA"). (*Id.*). Specifically, Bridges alleges that the BOP failed to award him 335 days of credit towards placement in a halfway house and 365 days of credit towards his FSA release date. (*Id.* at 2). For the reasons that follow, the Court will deny the habeas petition.

I.  **Background**

Bridges is serving a 120-month term of imprisonment imposed by the United States District Court for the Eastern District of North Carolina for his conviction of distribution and possession with intent to distribute heroin and possession of a firearm by a felon. (Doc. 6-2, Declaration of BOP Case Manager Alexander Reyes ("Reyes Decl."), at 1 ¶ 3; Doc. 6-3,

Public Information Inmate Data). His current projected release date is September 25, 2026, via good conduct time. (*Id.*).

A.  Administrative Remedy History

The Administrative Remedy Generalized Retrieval reveals that, while in BOP custody, Bridges filed the following administrative remedies. (Doc. 6-7, Administrative Remedy Generalized Retrieval).

On November 29, 2024, Bridges filed administrative remedy 1220697 with the institution, requesting FSA time credits. (Doc. 6-6, Declaration of BOP Warden's Secretary B. Reed ("Reed Decl."), at 2 ¶ 5; Doc. 6-7; Doc. 6-8, Administrative Remedy 1220697). The institution denied the remedy on December 9, 2024. (*Id.*). Bridges appealed to the Regional Director, and, on February 12, 2025, the Regional Director denied his appeal. (*Id.*). Bridges then appealed to the Central Office. (*Id.*). On March 25, 2025, the Central Office denied Bridges' appeal. (*Id.*).

On June 16, 2025, Bridges filed administrative remedy 1244066 at the institution level, wherein he requested Residential Reentry Center ("RRC") referral time. (Doc. 6-6, Reed Decl., at 2 ¶ 6; Doc. 6-7; Doc. 6-9, Administrative Remedy 1244066). On June 24, 2025, the institution denied the remedy. (*Id.*). Bridges did not appeal. (*Id.*).

B.  FSA Time Credits

The BOP conducted a First Step Act Time Credit Assessment and found that Bridges is ineligible for application of FSA time credits due to his medium PATTERN[1] score. (Doc. 6-2, Reyes Decl., at 1-2, ¶¶ 5-6; Doc. 6-4, FSA Time Credit Assessment).

II.  Discussion

In his § 2241 petition, Bridges alleges that the BOP violated his rights by denying him earned time credits under the FSA. (Doc. 1). Respondent contends that the § 2241 petition must be denied because: (1) Bridges is not eligible for application of FSA time credits at this time; and (2) Bridges failed to exhaust his administrative remedies concerning his Second Chance Act RRC placement claims. (Doc. 6).

A.  Bridges is not Eligible for Application of FSA Time Credits

Under the FSA, Congress charged the Attorney General with creating a Risk and Needs Assessment System (the "System") within 210 days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System would be used for: (1) determining an inmate's recidivism risk as part of the intake process; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically reassessing an inmate's recidivism risk; (5) reassigning an inmate to

---

[1] The Bureau of Prison's recidivism assessment tool, Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN").

3

appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; (7) determining when the inmate is ready to transfer to prerelease custody or supervised release; and (8) determining appropriate use of technology for those with dyslexia. *See id.* § 3632(a)(1)-(8).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in prerelease custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may initially earn 10 days of credit for every thirty 30 days of successful participation. *See id.* Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of credit for every 30 days of successful participation. *See id.*

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FSA time credits. *See id.* § 3632(d)(4)(D)-(E). In addition, an inmate cannot earn FSA time credits for EBRRs successfully completed prior to the enactment of the FSA on December 21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." *Id.* § 3632(d)(4)(B).

For application of FSA time credits to prerelease custody or supervised release, the inmate must satisfy the recidivism risk requirements set forth in 18 U.S.C. §§ 3624(g)(1)(D)(i)(I) and (ii). Those requirements are as follows.

"[I]n the case of a prisoner being placed in prerelease custody, the prisoner—[must] [have] [ ] been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(i)(I); *see also* 28 C.F.R. § 523.44(c)(1) (an eligible inmate must have "maintained a minimum or low recidivism risk through his or her last two risk and needs assessments").

"[I]n the case of a prisoner being placed in supervised release, the prisoner [must] [have] [ ] been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(ii); *see also* 28 C.F.R. § 523.44(d)(1) (an eligible inmate must have "maintained a minimum or low recidivism risk through his or her last risk and needs assessment").

Thus, inmates who are eligible for FSA time credits can accrue credits, but they cannot be applied until the inmate has earned a minimum or low recidivism risk. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(I); 18 U.S.C. § 3624(g)(1)(D)(ii); 28 C.F.R. § 523.44(c)(1); 28 C.F.R. § 523.44(d)(1).

Bridges is eligible to earn FSA time credits. Although Bridges may be eligible to earn time credits, those credits cannot be applied until he has been determined to be a minimum or low risk to recidivate. *Id.* Bridges' current recidivism risk level is medium. (Doc. 6-2, Reyes Decl., at 1-2, ¶¶ 5-6; Doc. 6-4, FSA Time Credit Assessment). Bridges will not be eligible for application of FSA time credits until, among other requirements, his risk level is reduced to minimum or low.

5

Additionally, an inmate with a high or medium PATTERN score can petition the warden to be considered on an individualized basis for placement in prerelease custody or supervised release. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II). There is nothing in the record indicating that Bridges made such a request to the warden. Thus, the Court must deny this claim.

### B.   Bridges Failed to Exhaust his Second Chance Act RRC Placement Claims

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. *See Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and

6

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'" *Brown v. Warden Canaan USP*, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

In order to exhaust administrative remedies, a federal inmate must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. *See generally* 28 C.F.R. §§ 542.10-542.19. Under these regulations, an inmate shall first attempt informal resolution of his complaint with staff and, if the inmate is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. *See id.* §§ 542.13-542.14. If the inmate is not satisfied with the Warden's response, the inmate shall then submit an appeal to the Regional Director, using the appropriate form. *See id.* § 542.15(a). And, finally, if the inmate is not satisfied with the Regional Director's response, then the inmate shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. *See id.* An inmate is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. *See id.* (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Here, the undisputed record reflects that, although Bridges filed an administrative remedy concerning RRC referral time—number 1244066—he undisputably failed to properly exhaust that remedy. (Docs. 6-6, 6-7, 6-9). Bridges filed administrative remedy

7

1244066 at the institution level, wherein he requested RRC referral time. (Doc. 6-6, Reed Decl., at 2 ¶ 6; Doc. 6-7; Doc. 6-9, Administrative Remedy 1244066). Upon review, the institution denied the remedy. (Id.). The record confirms that Bridges did not appeal to the Regional or Central Offices—the necessary steps to fully exhaust his administrative remedy. (Id.). Rather than comply with the Administrative Remedy process, Bridges bypassed the statutorily mandated procedures and, instead, filed the instant habeas petition in federal court.

Bridges concedes his failure to exhaust and argues that the exhaustion requirement should be "waive[d]." (Doc. 1, at 1). However, he fails to present any argument in support of this general assertion. (See id.). Bridges has not identified any BOP actions that would clearly and unambiguously violate statutory or constitutional rights, and he has not set forth any facts or advanced any argument that would permit this Court to find that exhaustion of administrative remedies would subject him to irreparable injury. His unsupported and conclusory claim that exhaustion should be waived is insufficient to circumvent the prudential exhaustion requirement for Section 2241 petitions.

The Court finds that Bridges' claim must first be presented to BOP officials and fully exhausted. Because Bridges did not fully exhaust his administrative remedies before petitioning this Court, and because no exception to the exhaustion requirement applies here, this claim must be denied.

## III.    Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  (Doc. 1).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: August 14, 2025